Stephen M. Rummage, *pro hac vice*
Martin Fineman (Cal. State Bar No. 104413)
DAVIS WRIGHT TREMAINE LLP
One Embarcadero Center, Suite 600
San Francisco, California 94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599
Email:          martinfineman@dwt.com

Attorneys for Defendants
Lowe's HIW, Inc. and Macy's Department Stores, Inc.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

| | |
|---|---|
| MICHAEL ARIKAT AND PASIMA ARIKAT, | Case No. C06-0330 RMW |
| Plaintiffs, | DEFENDANTS MACY'S AND LOWE'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS |
| v. | |
| JP MORGAN CHASE & CO., et al., | |
| Defendants. | Date: April 28, 2006 |
| | Time: 9:00 a.m. |
| | Department: SJ, Courtroom 6, 4th Floor |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 28, 2006, at 9:00 a.m.,[1] or as soon thereafter as the matter

may be heard in Courtroom Six of the United States District Court for the Northern District of

California, San Jose Division, located at 280 South First Street, San Jose, California, 95113,

defendants Macy's Department Stores, Inc. ("Macy's") and Lowe's HIW, Inc. ("Lowe's") will

and hereby do move this Court for an order dismissing the Complaint for Monetary Damages,

---

[1] Pursuant to the Court's Standing Order Regarding Case Management in Civil Cases, Counsel for Lowe's and Macy's contacted plaintiffs' counsel at the email address listed on the Electronic Court Filing system on March 7 and 9 to confer regarding the hearing date for this motion. Plaintiffs' counsel did not respond.

1

DAVIS WRIGHT TREMAINE LLP

Injunctions and Declaratory Relief filed by plaintiffs on January 18, 2006, pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, ordering plaintiffs to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Lowe's and Macy's make this motion based on the grounds that each of Plaintiffs' seven Causes of Action (i.e., for (1) "credit libel," (2) breach of contract, (3) fraud, (4) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., (5) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et. seq*., (6) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*., and (7) intentional infliction of emotional distress) fails to state a claim upon which relief can be granted. Plaintiffs' complaint also fails in its entirety because it is so vague, ambiguous and conclusory that Macy's and Lowe's cannot reasonably be required to frame a responsive pleading.

Lowe's and Macy's ask that the Court dismiss plaintiffs' complaint with prejudice in light of the facts that (a) plaintiffs previously filed another complaint against most of the same defendants, which they failed to prosecute, *see Arikat v. Chase Visa, et al.*, No. C05-033202 JW, and (b) plaintiffs' counsel previously filed an action in his own name against some of the same defendants, which contained many of the pleading defects identified in this motion, *see Hilton v. Fair Isaacs, Inc.*, No. C05-01285 RMW, "Order Granting Lee Buffington's, San Mateo County's, and Fair Isaac Corporation's Motion to Dismiss" (Aug. 8, 2005).

This Motion rests on the concurrently filed Memorandum of Points and Authorities, the Declaration of Martha Koehler and the attachments thereto, the pleadings and records on file, such further papers as the parties may file in connection with this Motion, and such further argument and evidence as the parties may present in connection with the hearing on this Motion.

Respectfully submitted this 13th day of March, 2006.

DAVIS WRIGHT TREMAINE LLP

By _____ /s/ _____

Stephen M. Rummage, *pro hac vice*
Martin Fineman (California Bar No. 104413)
Attorneys for Defendants Lowe's HIW, Inc. and
Macy's Department Stores, Inc.

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND........................................................................................ 2

III. STATEMENT OF ISSUES ........................................................................................ 4

IV. ARGUMENT AND AUTHORITY .............................................................................. 4

    A.    Plaintiffs' Cause of Action for "Credit Libel" Fails to State a Claim against Lowe's or Macy's. .............................................................................................. 6

    B.    Plaintiffs' Cause of Action for Breach of Contract Fails to State a Claim Because Plaintiffs Have No Credit Card Contract with Lowe's or Macy's. ............. 8

    C.    Plaintiffs' Cause of Action for Fraud Fails to State a Claim against Lowe's or Macy's and Is Not Pled with the Particularity Required by Rule 9(b). ............... 9

    D.    Plaintiffs' FCRA Cause of Action Fails to State a Claim against Lowe's or Macy's. .............................................................................................................. 11

    E.    Plaintiffs' ECOA Cause of Action Does Not State a Claim against Lowe's or Macy's. .............................................................................................................. 13

    F.    Plaintiffs' Cause of Action Under the California Fair Debt Collection Practices Act Fails to State a Claim against Lowe's or Macy's. ........................... 14

    G.    Plaintiffs Have Not Stated a Claim against Lowe's or Macy's for Intentional Infliction of Emotional Distress. ............................................................................. 15

    H.    In the Alternative, the Court Should Order Plaintiffs to Provide a More Definite Statement of Their Claims Pursuant to Rule 12(e)................................... 16

V. CONCLUSION ....................................................................................................... 18

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FEDERAL CASES**

*Balistreri v. Pacifica Police Department*, 901 F.2d 696 (9th Cir. 1988) ........................5

*Bruns v. Ledbetter*, 583 F. Supp. 1050 (S.D. Cal. 1984)........................................9, 10

*Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575 (N.D. Cal. 1999) ...........16, 17

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ....................................4

*Conley v. Gibson*, 355 U.S. 41 (1957)............................................................................5

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) ........................................5

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ....................2, 5, 8, 17

*Gorman v. Wolpoff & Abramson, LLP*, 370 F. Supp. 2d 1005 (N.D. Cal. 2005)....................7, 15

*Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139 (N.D. Cal. 2005) ..........................13

*Joseph v. J.J. MacIntyre Cos., L.L.C.*, 238 F. Supp. 2d 1158 (N.D. Cal. 2002) ..........15

*Kacludis v. GTE Sprint Communications Corp.*, 806 F. Supp. 866 (N.D. Cal. 1992) ....................5

*Miscellaneous Service Workers, Drivers & Helpers v. Philco-Ford Corp.*, 661 F.2d 776
   (9th Cir. 1981) ........................................................................................................9, 10

*Modern, Inc. v. Florida, Department of Transportation*, 381 F. Supp. 2d 1331
   (M.D. Fla. 2004) ........................................................................................................17

*Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002)..............12

*North Star International v. Arizona Corporations Commission*, 720 F.2d 578
   (9th Cir. 1983) ............................................................................................................4

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998).......................................................2

*Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073 (C.D. Cal. 1999) ....................................2, 4

*Transphase Systems, Inc. v. Southern Cal. Edison Co.*, 839 F. Supp. 711 (C.D. Cal. 1993)......4, 7

*Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277 (E.D. Wis. 1975) ..............17

*Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540 (D. Colo. 1990)............................17

**STATE CASES**

*Cochran v. Cochran*, 65 Cal. App. 4th 488, 76 Cal. Rptr. 2d 540 (1998)...............................15, 16

*Cooper v. Equity General Insurance*, 219 Cal. App. 3d 1252, 268 Cal. Rptr. 692 (1990) .........5, 9

*Gouskos v. Aptos Village Garage, Inc.*, 94 Cal. App. 4th 754, 114 Cal. Rptr. 2d 558 (2001)......14

*Kahn v. Bower*, 232 Cal. App. 3d 1599, 284 Cal. Rptr. 244 (1991)............................................6, 7

*Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 86 Cal. Rptr. 2d 73 (1999) ..................6

*Reichert v. General Insurance Co. of America*, 68 Cal. 2d 822, 69 Cal. Rptr. 321 (1968)............8

*Schild v. Rubin*, 232 Cal. App. 3d 755, 283 Cal. Rptr. 533 (1991) ..............................................16

*Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 132 Cal. Rptr. 2d 490 (2003) ......................................9

*Smith v. Maldonado*, 72 Cal. App. 4th 637, 85 Cal. Rptr. 2d 397 (1999) ......................................6

**FEDERAL STATUTES AND REGULATIONS**

12 C.F.R. § 202.4.....................................................................................................................13

15 U.S.C. § 1681, *et seq.* ...................................................................................................11, 12

15 U.S.C. § 1691, *et seq.* ..........................................................................................................13

**STATE STATUTES**

California Civil Code § 45..........................................................................................................6

California Civil Code § 46..........................................................................................................6

California Civil Code § 1788......................................................................................................14

DAVIS WRIGHT TREMAINE LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Michael and Pasima Arikat's complaint alleges seven causes of action against thirteen unrelated defendants, without bothering to say what conduct on the part of which defendants forms the basis for each claim.  Instead, the complaint, which closely tracks prior complaints filed by both the Arikats and their lawyer against many of these same defendants, describes the defendants' alleged misconduct in language so broad as to be meaningless, then links each defendant to that alleged misconduct through the cursory assertion (pled on information and belief) that ***all*** defendants – including competitors and companies operating in different industries – acted as the agents and employees of all other defendants and that, therefore, "[e]ach cause of action is pled against each and every defendant."  Complaint, ¶¶ 2, 5.

Even allowing for the fact that the Federal Rules of Civil Procedure contemplate that courts will read pleadings liberally, the Arikats' shotgun complaint does not state legally cognizable claims against Lowe's and Macy's.[2]  Although the Arikats' claims appear to revolve around allegations concerning credit relationships and credit reporting, the agreements to which their complaint refers make clear that Lowe's and Macy's did not even have a credit relationship with them.  As a result, the complaint does not set forth sufficient factual allegations to support each claim against Lowe's and Macy's, and does not plead facts sufficient to allow them even to frame a meaningful responsive pleading.  Lowe's and Macy's therefore respectfully request that the Court dismiss plaintiffs' complaint in its entirety with prejudice or, in the alternative, that it order plaintiffs to clarify their claims to specify which causes of action are alleged against which defendant and the factual basis for each claim.

---

[2] Defendants Fair Isaac, TransUnion and Discover Financial Services have filed their own motions to dismiss, in which those defendants likewise assert that the complaint fails to state legally cognizable claims against them.

1

## II. FACTUAL BACKGROUND

Plaintiffs Michael and Pasima Arikat allege that they entered into "various and sundry credit agreements with all named defendants," apparently including Lowe's and Macy's. Complaint, ¶ 16. The "credit agreements" for the Lowe's and Macy's-branded credit cards to which the complaint refers, however, make clear that Lowe's and Macy's did ***not*** issue credit cards to the Arikats; indeed, Macy's and Lowe's were not even parties to the contracts pursuant to which the Arikats received their Lowe's and Macy's cards. *See* Koehler Decl., Exs. 1-4.[3]

In applying for the Lowe's-branded credit card, the Arikats "ask[ed] that Monogram Credit Card Bank of Georgia ('you') issue [us] a Lowe's credit card." Koehler Decl., Ex. 1 at 2. Consistent with that request, the agreement for the Arikats' Lowe's-branded credit card makes clear that Monogram Credit Card Bank of Georgia ("Monogram"), not Lowe's, issued the card. The agreement begins by defining the parties to the credit card agreement as follows:

> In this Agreement and in your billing statement ("Statement"), "we", "us", and "our" refer to Monogram Credit Card Bank of Georgia, … our assignees, or other holders of this Agreement or your Account. "You" and "your" refer to all persons who are approved by us to use the Account.

Koehler Decl., Ex. 2 at 1, ¶ 1. *See also id.* at 4, ¶ 14 ("The Card is issued to you by us at your request"); *id.* at 9 (Monogram's signature on agreement). In the agreement for the Lowe's-branded card, the Arikats also "authorize us [i.e., Monogram] to report information concerning you or your Account, including information about your performance under this Agreement, to consumer reporting agencies and others who may properly receive such information." Koehler Decl., Ex. 2 at 5, ¶ 14.

---

[3] Lowe's and Macy's submission of the credit card applications and agreements does not convert this motion to one for summary judgment. The Ninth Circuit has explained, "[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). *See also Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073, 1075 (C.D. Cal. 1999) (same); *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 953 (S.D. Cal. 1996) ("[D]ocuments referred to in the complaint and forming a basis for plaintiff's claims may be considered [on a motion to dismiss].").

Similarly, the application for the Macy's-branded credit card advised the Arikats that "[t]he Macy's credit card program is administered by FDS Bank and GE Capital Consumer Card Co." and that the "creditor" for the account would be FDS Bank or GE Capital Consumer Card Co. ("GE Capital"). Koehler Decl., Ex. 3 at 2-3. Consistent with the application, the agreement for the Arikats' Macy's-branded credit card makes clear that Macy's has not issued the card. The agreement begins by defining the parties to the credit card agreement as follows:

> "We", "us" and "our" mean the issuer of your card, either FDS Bank or GE Capital Consumer Card Co., and our assignees. … "You" and "your" means each person who signed a Macy's ("Macy's") Application/Bank Credit Card and Security Agreement or otherwise agreed to open a Macy's Credit Card Account with us and each person who is authorized to use the Macy's Credit Card Account ("Account") established by us.

Koehler Decl., Ex. 2 at 1, ¶ 1. *See also id.* ("'Credit card' means the credit card issued to you by us"); *id.* at 2 (GE Capital's signature). In the agreement for the Macy's-branded card, the Arikats also "give us [i.e., GE Capital] permission to … furnish information concerning your Account as well as information concerning you to consumer reporting agencies and other proper parties." Koehler Decl., Ex. 2 at 2, ¶ 10.

Despite the plain language of the credit agreements alleged in their complaint, the Arikats sued Lowe's and Macy's. The Arikats' complaint indiscriminately lumps these two retailers together with a management consulting company that has developed analytics for credit scoring systems (Fair Isaac), three credit reporting agencies (TransUnion, Experian and Equifax), two competing retailers (Sears and Home Depot), and five unrelated financial institutions (J.P. Morgan Chase, Midcoast Credit, MBNA Marketing Systems, Discover Financial Services, and Wells Fargo Financial). Ignoring the obvious lack of connection among these defendants, the Arikats make the conclusory allegation that "each of [these] defendants were [sic] the agent and employee of each of the remaining defendants," Complaint, ¶ 5, and then assert seven causes of action against all defendants without any distinction among the defendants.

DAVIS WRIGHT TREMAINE LLP

Even the most lenient approach to pleading cannot salvage this complaint. For that reason, Lowe's and Macy's ask the Court to dismiss the claims against them with prejudice in light of the facts that (a) the Arikats previously filed another complaint against most of the same defendants, which they failed to prosecute, *see Arikat v. Chase Visa, et al.*, No. C05-033202 JW, and (b) the Arikats' counsel previously filed an action in his own name – again, against some of the same defendants – which contained many of the pleading defects identified in this motion, *see Hilton v. Fair Isaacs, Inc.*, No. C05-01285 RMW, "Order Granting Lee Buffington's, San Mateo County's, and Fair Isaac Corporation's Motion to Dismiss" (Aug. 8, 2005). *See* Fair Isaac Corporation's Request for Judicial Notice in Support of Motion to Dismiss (2/21/06) (attaching relevant documents). In short, the Arikats and their lawyers had both the opportunity and the knowledge necessary to plead properly, but chose not to do so. The Court need not (and should not) offer them a third opportunity.

### III. STATEMENT OF ISSUES

Should the Court dismiss plaintiffs' complaint for failure to state claims upon which relief may be granted?

### IV. ARGUMENT AND AUTHORITY

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (affirming dismissal); *Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073, 1082 (C.D. Cal. 1999) (granting motion to dismiss). Although the Court must accept as true all well-pleaded factual allegations of the complaint, the Court need not "'accept as true conclusory allegations … or unreasonable inferences.'" *Transphase Sys., Inc. v. Southern Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) (granting motion to dismiss) (citation omitted). *See also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (affirming dismissal and explaining that "the court is not

required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged").

Plaintiffs who choose to sue multiple defendants and assert multiple causes of action must specify in their complaint which causes of action and factual allegations they assert against which defendant. As the court explained in a case where plaintiff asserted claims against five defendants under three causes of action on two patents, but failed to specify which claims were brought against which defendants and which facts supported each claim, "[Rule 8] require[s] that the defendant be given 'fair notice of [1] what the plaintiff's claim is and [2] the grounds upon which it rests.' The plaintiff's shotgun approach is clearly deficient to serve either of these purposes." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 960 (S.D. Cal. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (granting in part defendant's motion to dismiss). *See also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing cause of action where "defendants are lumped together in a single, broad allegation" and plaintiff failed to specify how each defendant allegedly deprived plaintiff of his rights).

A trial court may base dismissal under Rule 12(b)(6) either on the "lack of a cognizable legal theory" or on "insufficient facts under a cognizable legal theory." *Kacludis v. GTE Sprint Comm. Corp.*, 806 F. Supp. 866, 870 (N.D. Cal. 1992) (granting defendants' motion to dismiss) (citation omitted); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (affirming dismissal of due process claim). "Leave to amend should be denied if the undisputed facts give rise to no liability as a matter of law." *Cooper v. Equity Gen. Ins.*, 219 Cal. App. 3d 1252, 1263, 268 Cal. Rptr. 692, 698 (1990) (affirming dismissal without leave to amend).

With these standards in mind, Lowe's and Macy's will address the deficiencies in each of the seven causes of action, in the order in which the Arikats have alleged them. Following that discussion, Lowe's and Macy's will discuss their alternative request for a more definite statement.

DAVIS WRIGHT TREMAINE LLP

### A. Plaintiffs' Cause of Action for "Credit Libel" Fails to State a Claim against Lowe's or Macy's.

The tort of defamation, which includes both libel and slander, requires allegation and proof of "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645, 85 Cal. Rptr. 2d 397, 402 (1999).

> Where the words or other matters which are the subject of a defamation action are of ambiguous meaning, or innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning, or "innuendo," which makes them defamatory. Where the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense.

*Id.* at 645-46, 85 Cal. Rptr. at 402-3 (internal citation omitted). *See also* Cal. Civ. Code §§ 45, 46. Any alleged defamation must be apparent from the language used, either on its face, or with the reading of additional facts. *See Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5, 86 Cal. Rptr. 2d 73, 76 (1999) (affirming dismissal of libel claim). "The general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612 n.5, 284 Cal. Rptr. 244, 252 n.5 (1991) (citing 5 Witkin, Cal. Procedure § 688, at 140 (3d ed. 1985)).

Here, the Arikats' claim for "credit libel" rests on the broad allegation that they

> have been defamed by defendants in that they [i.e., defendants] have arbitrarily and discriminatorily published false and defamatory and derogatory "default" and "delinquent" credit reports against plaintiffs in their credit reports.

Complaint, ¶ 8. Plaintiffs further allege that "Defendants arbitrarily and discriminatorily published and broadcast information that lowered plaintiff's FICO scores and called him [sic] a worse deadbeat, just because of these unsolicited inquiries, by persons known and unknown." *Id.* The remainder of plaintiffs' allegations regarding credit libel relate to publication of their FICO scores by unidentified defendants; steps taken by the Arikats regarding disputes over charges and

credit reports; and the Arikats' commentary on their philosophical disagreement with the use and calculation of FICO scores. Complaint, ¶¶ 10-11.

These vague allegations do not state a credit libel claim against Lowe's or Macy's. As explained above, the Court in considering a motion to dismiss need not "'accept as true conclusory allegations … or unreasonable inferences.'" *Transphase Sys.,* 839 F. Supp. at 718 (citation omitted). Here, because Lowe's and Macy's do not have a credit relationship with the Arikats, Koehler Decl., Exs. 1-4, the Court cannot reasonably infer that Lowe's or Macy's engaged in any credit reporting activities, much less activities of the nature described in the Arikats' complaint.

But even assuming *arguendo* that Lowe's or Macy's engaged in credit reporting activities despite the absence of a credit relationship, the Arikats' conclusory and vague assertions (many of which amount to mere legal conclusions) do not state a claim for libel. Most notably, the Arikats' allegations of credit libel do not identify or quote the allegedly libelous words published by Lowe's or Macy's, as California law requires, *see Kahn*, 232 Cal. App. 3d at 1612 n.5, 284 Cal. Rptr. at 252 n.5, and do not identify which Lowe's or Macy's debts the alleged libel referred to, which defendant(s) allegedly published the libel, when or where Lowe's or Macy's published the libel, and so on. Courts confronting similar pleading deficiencies have dismissed similar claims based on financial reporting. In *Gorman v. Wolpoff & Abramson, LLP*, 370 F. Supp. 2d 1005, 1010 (N.D. Cal. 2005), for example, the court dismissed a libel claim based on alleged violation of credit reporting and debt collection statutes where the plaintiff, like the Arikats here, used "non-descriptive phrases (e.g., '[i]n or about 2003' and 'a dispute arose') and legal conclusions (e.g., 'Plaintiff timely notified', 'defamatory information', 'threatening and harassing', 'wrongfully refused', 'sufficient investigation', and 'should be corrected')" throughout the complaint.

Because the Arikats have not alleged that Lowe's or Macy's published any particular false statements that caused them damage, they have not stated a claim for credit libel.

**B.** **Plaintiffs' Cause of Action for Breach of Contract Fails to State a Claim Because Plaintiffs Have No Credit Card Contract with Lowe's or Macy's.**

A plaintiff asserting a breach of contract claim must plead and prove the existence of a contract. *See Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830, 69 Cal. Rptr. 321, 325 (1968). If a plaintiff can satisfy that hurdle, he must then demonstrate his own performance or excuse for nonperformance, the defendant's breach, and resulting damages. *Id.*

As the basis for their breach of contract claim, the Arikats broadly allege that "[i]n or about February 1, 2004, plaintiffs entered into various and sundry credit agreements with all named defendants, and/or their assignors. These were for credit card and other commercial credit for buying goods and services." Complaint, ¶ 16. The Arikats further allege that

> [o]n or about February 1, 2004 and continuously to the present date per annum and per diem [*sic*], defendants materially breached said loan agreements by arbitrarily, unjustifiably, illegally and discriminatorily increasing the monthly payment for plaintiffs, imposing late fees and other "administrative" and other fees plaintiffs had never agreed to, ignoring plaintiffs' notice of dispute of debts, refused to submit written proof of the debts to plaintiffs on demand, etc.

Complaint, ¶ 18.

The complaint does not allege any particular act or practice by Lowe's or Macy's that supposedly violated a contract with the Arikats. Further, as explained above, the credit card agreements for the Macy's and Lowe's-branded credit cards referred to in the complaint establish that Macy's and Lowe's did ***not*** have contracts with the Arikats with respect to their credit card accounts. *See* Koehler Decl., Exs. 1-4; *Gen-Probe*, 926 F. Supp. at 953 ("[D]ocuments referred to in the complaint and forming a basis for plaintiff's claims may be considered [on a motion to dismiss]."). Accordingly, the Arikats' complaint fails to state a breach of contract claim against Macy's and Lowe's.

DAVIS WRIGHT TREMAINE LLP

**C.      Plaintiffs' Cause of Action for Fraud Fails to State a Claim against Lowe's or Macy's and Is Not Pled with the Particularity Required by Rule 9(b).**

To state a claim for fraud, a plaintiff must plead and prove "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173, 132 Cal. Rptr. 2d 490, 494 (2003) (citations omitted). California law further requires that "every element of a cause of action for fraud must be alleged both factually and specifically, and the policy of liberal construction of pleadings will not be invoked to sustain a defective complaint." *Cooper*, 219 Cal. App. 3d at 1262, 268 Cal. Rptr. at 698. The plaintiff must plead "*facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'" *Small*, 30 Cal. 4th at 184, 132 Cal. Rptr. 2d at 502 (citation omitted).

Dovetailing with California law, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement on fraud claims: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Under this Rule, the pleader must state "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation"; where the "manner, content or medium of the alleged misrepresentations is not specified," the court should dismiss. *See Miscellaneous Serv. Workers, Drivers & Helpers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981). Like the Arikats, the plaintiffs in *Bruns v. Ledbetter*, 583 F. Supp. 1050, 1051 (S.D. Cal. 1984), sued 14 defendants on 18 counts, alleged that "each defendant is the agent of the others" and that "all defendants aided and abetted one another," and asserted every allegation against every defendant. The Court dismissed the fraud claims, explaining:

> those seeking redress must distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud. …
> A complaint should be long on facts and short on invective.  It must set forth: (1) the nature of each individual defendant's participation

DAVIS WRIGHT TREMAINE LLP

> in the fraud, including facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor; and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.

*Id.* at 1052.

Here, the Arikats have not come close to satisfying their pleading burden. The Arikats allege only that "[o]n or about February 1, 2004, defendants" as a group made "certain misrepresentations," apparently centered on a "promise[] to bill plaintiffs accurately and fairly for actual goods and services purchased, and only on express terms and conditions agreed to *ab initio*." Complaint, ¶ 23. The Arikats generally allege that they relied on these statements "in that they signed up for the credit cards and charged goods and services," Complaint, ¶ 24, but that "defendants reneged on their promises and agreements above stated, by arbitrarily and discriminatorily increasing the monthly amount they required plaintiffs to pay. And they ignored plaintiffs' dispute of charges." Complaint, ¶ 25.

As this excerpt makes clear, the Arikats' credit card agreement lies at the core of their fraud claim – and Lowe's and Macy's did ***not*** issue the Arikats' credit card or enter into a credit card agreement with them. *See* Koehler Decl., Exs. 1-4. Further, the Arikats' vague factual allegations (including that all defendants are culpable for all causes of action) fall far short of the strict pleading requirements of Rule 9(b) and California law. The allegation that "defendants" made "certain representations" to induce plaintiffs "to sign loan and credit agreements," Complaint, ¶ 23, does not come close to satisfying the Arikats' obligation to allege "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Miscellaneous Serv. Workers*, 661 F.2d at 782. Similarly, the Arikats' allegations of broad legal conclusions, e.g., that they "wound up being defamed and harassed" and

DEFENDANTS MACY'S AND LOWE'S NOTICE OF MOTION AND
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. C06-0330

SEA 1754054v3 14122-271

that unspecified "defendants" acted "arbitrarily and discriminatorily" by increasing monthly payments, do not satisfy their pleading burden. *See* Complaint, ¶¶ 24-25.

### D. Plaintiffs' FCRA Cause of Action Fails to State a Claim against Lowe's or Macy's.

The federal Fair Credit Reporting Act regulates the reporting and use of credit information. *See* 15 U.S.C. § 1681, *et seq.* FCRA requires that credit reporting agencies, such as TransUnion, Experian and Equifax, (1) follow reasonable procedures to ensure maximum accuracy of the information reported, and (2) upon notification from a consumer that he or she disputes the information reported, engage in a reasonable investigation. 15 U.S.C. §§ 1681e, i(a)(1). FCRA also prohibits furnishers of credit information from reporting information that they know is erroneous; requires them to correct and update information; requires them to provide notice of disputes, closed accounts and delinquent accounts; and requires them to take certain steps upon receiving notice of a dispute. 15 U.S.C. § 1681s-2(a), (b). Finally, FCRA requires users of credit information to provide notice and certain information to the consumer if they take adverse action based on information in a credit report or received from other sources. *See* 15 U.S.C. § 1681m(a).

As the basis for their FCRA claim, the Arikats allege that "[t]he defendants" violated FCRA through a laundry list of actions. Complaint, ¶ 29. Among other things, the complaint alleges that "the defendants" did not "accurately report credit information" and instead reported "false and defamatory credit information," did not "disclose clear and reasonable criteria for calculating the FICO scores of plaintiffs," did not "report the fact that plaintiff reported having legitimate bona fide legal disputes over the accuracy and collectibility of certain debts," and so on. Complaint, ¶ 29. The complaint, however, does not make any effort to link any of these actions to Lowe's or Macy's, who did not even issue credit cards to the Arikats.

These vague allegations do not state a FCRA claim against Lowe's and Macy's. FCRA generally governs the conduct of credit reporting agencies ("CRAs"), furnishers of credit

information, and users of credit reporting services. The Arikats have not alleged (and could not allege) that Macy's and Lowe's operate as CRAs governed by the FCRA requirements applicable to such agencies. *See* 15 U.S.C. § 1681-2(a). Accordingly, the Arikats have no basis for asserting liability against Lowe's or Macy's for violation of a CRA's obligations.

Nor have the Arikats alleged that Macy's and Lowe's furnished information regarding their credit. But even if plaintiffs **had** alleged properly that Lowe's and Macy's furnished credit information to a CRA, FCRA imposes civil liability on furnishers of information **only** if they do not properly respond to a formal dispute notice from a CRA. 15 U.S.C. § 1681s-2; 15 U.S.C. § 1681i(a)(2). As the Ninth Circuit has explained, Congress thus provided a "filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher." *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). Here, the Arikats have not alleged that Lowe's or Macy's ever received a qualifying notice from a CRA, much less that they failed to respond properly. Accordingly, they have not asserted the elements of a FCRA claim against a furnisher of information.

Finally, the Arikats have not alleged that Lowe's or Macy's violated the FCRA provisions requiring **users** of credit information to give notice of adverse action taken based on credit information. *See* 15 U.S.C. § 1681m(a). Because Macy's and Lowe's have no credit relationship with the Arikats, it would be implausible to infer that they improperly used the Arikats' credit information. Further, the Arikats' undifferentiated allegations that some unidentified person (apparently **not** Macy's or Lowe's) denied them credit or charged them "usurious and exorbitant interest rates," Complaint, ¶ 29, do not state a FCRA claim against Macy's and Lowe's as alleged users of credit information.

The Arikats do not allege the credit information that they believe was inaccurate, do not assert who reported inaccurate information, do not say who used the information, do not state what credit or re-financing they lost, and do not specify what lender allegedly imposed a "usurious and exorbitant interest rate." Because they do not "specifically identify which defendants engaged in each alleged violation of the FCRA," the Arikats have not stated a FCRA claim against Lowe's and Macy's. *See Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1147 (N.D. Cal. 2005).

### E. Plaintiffs' ECOA Cause of Action Does Not State a Claim against Lowe's or Macy's.

The Equal Credit Opportunity Act ("ECOA") makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction – (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a). Although ECOA and FCRA have little in common (in either their purposes or their operative provisions), the Arikats allege precisely the same facts in support of their ECOA cause of action as they did for their FCRA claim, changing only the statutory references. *See* Complaint, ¶ 36; *compare* Complaint, ¶ 29.

The Arikats' complaint does not state an ECOA claim against Lowe's or Macy's. The Arikats have not alleged either (a) that they are members of the classes of potential credit applicants protected by ECOA, or (b) that Lowe's or Macy's discriminated against them or discouraged them from applying for credit. *See* 12 C.F.R. 202.4(a), (b). Indeed, the record shows that the Arikats ***did*** have Macy's and Lowe's-branded credit cards – though entities not named in this litigation issued those credit cards. *See* Koehler Decl., Exs. 1-4. The complaint does not contain any factual allegation supporting a reasonable inference that Lowe's or Macy's violated the Arikats' rights under ECOA.

DAVIS WRIGHT TREMAINE LLP

**F.** **Plaintiffs' Cause of Action Under the California Fair Debt Collection Practices Act Fails to State a Claim against Lowe's or Macy's.**

The Rosenthal Fair Debt Collection Practices Act ("California FDCPA") prohibits debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts.[4] *See* Cal. Civ. Code §§ 1788.1(b), 1788.10, 1788.11, 1788.12. The Act defines a "debt collector" as a person who "in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). "Debt collection" is defined as "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b). Consumers may bring actions under the California FDCPA only against a debt collector, ***not*** against the seller of services that give rise to the debt being collected. *See Gouskos v. Aptos Village Garage, Inc.*, 94 Cal. App. 4th 754, 759-60, 114 Cal. Rptr. 2d 558, 561-62 (2001) (affirming directed verdict against plaintiff on grounds that defendant automobile repair shop was not a debt collector as defined by the California FDCPA).

As with their other causes of action, the Arikats once again allege only generally that "defendants" engaged in debt collection activity, without distinguishing among the thirteen credit reporting agencies, retailers and financial institutions named as defendants. Among other things, the Arikats refer vaguely to "endless annoying and minatory phone calls," "endless letters and minatory notices," "ceaseless annoying phone calls," calls both "at work" and "outside their household," as well as calls "after business hours," but do not allege who made the calls or on whose behalf, do not identify the debts being collected, and do not allege when they received the calls. Complaint, ¶ 42. The Arikats do not link ***any*** of these calls to Lowe's or Macy's.

---

[4] "Consumer debt" means "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f). A "consumer credit transaction" is a transaction where a person acquires property or services on credit, i.e., "when the consumer acquires something without paying for it." *Gouskos v. Aptos Village Garage, Inc.*, 94 Cal. App. 4th 754, 759, 114 Cal. Rptr. 2d 558, 561 (2001).

This pleading strategy does not state a claim against Macy's and Lowe's under the California FDCPA. As explained above, Macy's and Lowe's operate as retailers; they did ***not*** issue the Arikats their Macy's and Lowe's-branded credit cards. In these circumstances, the Court should find it dispositive that the Arikats have not alleged that Lowe's or Macy's made any debt collection calls at all, much less calls that violated the statute. The court in *Gorman v. Wolpoff*, 370 F. Supp. 2d 1005, rejected a similar pleading strategy on a claim under the parallel federal Fair Debt Collection Practices Act.[5] The *Gorman* court noted that the plaintiff had failed to "allege the date or contents" of even one allegedly improper collection call or to allege that defendant had reason to know that plaintiff's employer prohibited debt collection calls. *Id.* at 1013. The court concluded: "[Plaintiff's] allegation that he received 'harassing, threatening, abusive, oppressive, and annoying telephone calls' is conclusory and insufficient to state a claim based on [the federal FDCPA]." *Id.*

Like the plaintiff in *Gorman*, the Arikats have not alleged any conduct at all by Lowe's or Macy's, much less the details, such as the date and content, of any such conduct that might entitle them to relief under the California FDCPA.

### G. Plaintiffs Have Not Stated a Claim against Lowe's or Macy's for Intentional Infliction of Emotional Distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998) (affirming dismissal). The defendant must engage in conduct "'so

---

[5] Because few cases interpret the California FDCPA, courts have relied on interpretations of its federal counterpart, the federal Fair Debt Collection Practices Act. *See Joseph v. J.J. MacIntyre Cos., L.L.C.*, 238 F. Supp. 2d 1158, 1167-68 (N.D. Cal. 2002).

DAVIS WRIGHT TREMAINE LLP

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 496, 76 Cal. Rptr. at 545 (citation omitted). The plaintiff must suffer emotional distress so severe that it "entails such intense, enduring and nontrivial emotional distress that 'no reasonable [person] in a civilized society should be expected to endure it.'" *Schild v. Rubin*, 232 Cal. App. 3d 755, 762-63, 283 Cal. Rptr. 533, 537-38 (1991) (citations omitted).

The Arikats' allegations on their emotional distress claim amount to nothing more than the absurdly terse statement that "[t]he above acts of defendants were outrageous and constitute intentional infliction of emotional distress, waking plaintiffs up at wee hours of the morning with harassing collection phone calls, etc." Complaint, ¶ 46. But the Arikats do not make any allegations specific to Lowe's or Macy's, nor does the complaint allege that Lowe's or Macy's engaged in any conduct that rises to the level of "extreme," "outrageous," "atrocious" or "utterly intolerable," as required to state a claim for intentional infliction of emotional distress. *See Cochran*, 65 Cal. App. 4th at 496, 76 Cal. Rptr. 2d at 545. Further, the Arikats have not alleged that they suffered the requisite "severe emotional distress" that "no reasonable [person] in a civilized society should be expected to endure," *Schild*, 232 Cal. App. 3d at 762-63, 283 Cal. Rptr. at 537, much less that Lowe's or Macy's did anything to cause them any such distress.

**H. In the Alternative, the Court Should Order Plaintiffs to Provide a More Definite Statement of Their Claims Pursuant to Rule 12(e).**

If the Court decides not to dismiss the Arikats' complaint as to Macy's and Lowe's, the Court at least should order them to re-plead (consistent with Rule 11) to make clear which claims they allege against which defendants and the factual basis underlying each claim.

Under Rule 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." "[T]he proper

test in evaluating a motion under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). "[W]hen the pleading is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself,'" a court should require a more definite statement. *Id.* (citation omitted).

Rule 12(e) has particular utility in cases such as this one. When plaintiffs sue multiple defendants and allege multiple causes of action, plaintiffs "must make clear to whom each Count applies." *Modern, Inc. v. Florida, Dept. of Transp.*, 381 F. Supp. 2d 1331, 1350 (M.D. Fla. 2004). "Where … there are multiple defendants, the complaint should specify what conduct by each defendant gives rise to the asserted claim." *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1549 (D. Colo. 1990) (granting motion for more definite statement where complaint failed to specify which defendants engaged in which "outrageous conduct and acts") (citation omitted). *See also Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 284 (E.D. Wis. 1975) ("Specific identification of the parties to the activities alleged by plaintiffs is required in this action to enable the defendant to plead intelligently. This is particularly appropriate since … the complaint frequently refers to 'plaintiffs' or 'defendants' without indicating which of the five plaintiffs or nine defendants are intended."). Indeed, courts have condemned the sort of "shotgun approach" adopted by the Arikats and their counsel, recognizing the burden it places on an answering defendant. *See Gen-Probe*, 926 F. Supp. at 960. Rule 12(e) provides the appropriate means of requiring the Arikats to conform their pleading to Ninth Circuit standards.

# V. CONCLUSION

For the reasons set forth above, Macy's and Lowe's respectfully request that the Court dismiss plaintiffs' complaint or, in the alternative, order plaintiffs to provide a more definite statement consistent with Rule 11, stating which claims they allege against which defendants and the factual basis for each such claim.

Respectfully submitted this 13th day of March, 2006.

DAVIS WRIGHT TREMAINE LLP

By _____/s/_____
    Stephen M. Rummage, *pro hac vice*
    Martin Fineman (Cal. Bar No. 104413)

Attorneys for Defendants Lowe's HIW, Inc. and
Macy's Department Stores, Inc.

DAVIS WRIGHT TREMAINE LLP