**E-FILED on** 5/3/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL ARIKAT AND PASIMA ARIKAT,<br><br>        Plaintiffs,<br><br>   v.<br><br>JP MORGAN CHASE & CO.; LOWE'S HIW, INC.; MACY'S DEPARTMENT STORES, INC.; MBNA MARKETING SYSTEMS, INC.; MIDCOAST CREDIT CORP.; DISCOVER FINANCIAL SERVICES, INC.; HOME DEPOT U.S.A., INC.; SEARS, ROEBUCK AND CO.; WELLS FARGO FINANCIAL CALIFORNIA, INC.; FAIR ISAAC CORPORATION; TRANS UNION LLC; EQUIFAX INC.; EXPERIAN SERVICES CORP.<br><br>        Defendants. | No. C-06-00330 RMW<br><br>ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS<br><br>**[Re Docket Nos. 55, 59, 63]** |

    Defendant Discover Financial Services, Inc. ("Discover"), defendant Fair Isaac Corporation ("Fair Isaac") and defendants Macy's Department Stores, Inc. ("Macy's") and Lowe's HIW, Inc.

("Lowe's") separately filed motions to dismiss for failure to state a claim.[1] Defendants Discover and Fair Isaac also move in the alternative for a more definite statement. Plaintiffs Michael and Pasima Arikat (collectively "plaintiffs") oppose Discover's motion. On April 17, 2006 plaintiffs filed oppositions ten days late opposing Fair Isaac's and Macy's and Lowe's motions. On April 28, 2006 the court heard oral argument on these motions. The court has reviewed the parties' papers and considered their arguments. For the reasons set forth below, the court GRANTS Discover's, Fair Isaac's, and Macy's and Lowe's motions to dismiss.

## I. BACKGROUND

### A.   The parties

Plaintiffs state that they are credit worthy individuals with a six figure income. Compl. ¶ 8. Plaintiffs have been issued low credit ratings and have received credit reports with indications of "default" or "delinquent." *Id.* Plaintiffs have challenged and disputed certain charges on their credit accounts, which have been ignored by defendants. *Id.* Meanwhile, plaintiffs continue to be charged interest and late fees by defendants.[2] *Id.* at 11.

Defendant Fair Isaac provides statistically based credit-risk evaluation systems which use mathematical formulas and are commonly known as credit scoring systems. Fair Isaac Mot. at 3-4. Third parties, such as credit bureaus, use Fair Isaac's systems to analyze the data in a person's credit bureau report, producing a credit score commonly known as a "FICO score." *Id.* A FICO score identifies a person's level of future credit risk, with a low FICO score indicating a high level of credit risk. *Id.* at 3-5.

Defendants Macy's and Lowe's are retailers. Customers of Macy's and Lowe's may have "Macy's-branded" or "Lowe's-branded" credit cards. These store branded credit card programs are

---

[1] It appears from Discover's Notice of Motion to Dismiss that Discover only seeks to dismiss plaintiffs' third, fourth, fifth, and sixth causes of action. *See* Discover's Notice of Mot. Dismiss; *see also* Discover's Mot. Dismiss at 1-9 (setting forth legal arguments to dismiss the third through sixth causes of action). *But see* Discover's Mot. Dismiss at 10 (stating in its conclusion that the court should dismiss all seven of plaintiffs' causes of action).

[2] Plaintiffs' complaint does not specify which defendants were contacted about plaintiffs' disputes and which defendants are charging interest and late fees.

administered by third party banks and the credit cards are issued pursuant to credit card agreements between the card holder and a third party bank. Macy's and Lowe's Mot. Dismiss at 2-3. It is not disputed that plaintiffs were issued Macy's and Lowe's-branded credit cards. *Id.* at 2. Plaintiffs' Lowe's credit card was issued pursuant to a credit card agreement between plaintiffs and Monogram Credit Card Bank of Georgia and plaintiffs' Macy's credit card was issued pursuant to a credit card agreement between plaintiffs and FDS Bank or GE Capital Consumer Card Co. *Id.* at 2-3.

Defendant Discover apparently provides financial services such as credit cards, certificates of deposit and money market accounts, auto insurance and home loans directly to consumers.[3]

Plaintiffs' complaint names thirteen defendants: Fair Isaac; JP Morgan Chase & Co.; MBNA Marketing Systems, Inc.; Midcoast Credit Corp.; Discover; Wells Fargo Financial California, Inc.; Trans Union LLC; Equifax, Inc.; Experian Services Corp.; Lowe's; Macy's; Sears, Roebuck and Co.; and Home Depot U.S.A., Inc. Plaintiffs allege that all defendants engaged in credit libel, breach of contract, fraud, violation of the Federal Fair Credit Reporting Act ("FCRA") under 15 U.S.C. § 1681 *et seq.*, violation of the Federal Equal Credit Opportunity Act ("ECOA") under 15 U.S.C. § 1691 *et seq.*, violation of California's Rosenthal Fair Debt Collection Practices Act ("CFDCPA") under Cal. Civ. Code § 1788 *et seq.*,[4] and intentional infliction of emotional distress. Plaintiffs also contend that defendants were agents and employees of each other acting within the scope and course of such agency and employment in carrying out the alleged violations. Compl. ¶ 5.

**B.     Related actions**

On March 30, 2005 counsel for plaintiffs filed *Hilton v. Fair Isaac, et al.*, C-05-01285 RS, alleging, *inter alia*, credit libel, breach of contract, fraud, violations of the FCRA, and violations of

---

[3] Discover's Memorandum of Points and Authorities in Support of Discover's Motion to Dismiss does not contain a statement of relevant facts. *See* Civil L.R. 7-4(a)(4).

[4] It appears that plaintiffs' complaint includes a claim under the CFDCPA and but not the federal counterpart, the Fair Debt Collection Practices Act ("FDCPA").

the ECOA (the "*Hilton* Complaint").[5]  That action also names certain of the defendants in the instant suit, namely Fair Isaac, Trans Union, Equifax, and Experian, and is presently a related action before this court.  This court's August 8, 2005 Order Granting Lee Buffington's, San Mateo County's, and Fair Isaac Corporation's Motion to Dismiss (the "Aug. 8, 2005 Order") granted Fair Isaac's motion to dismiss without leave to amend.[6]  Aug. 8, 2005 Order at 11.

On August 12, 2005 plaintiffs filed *Arikat v. Chase Visa, et al.*, C-05-03302 JW, setting forth the same seven causes of action as the instant suit (the "Aug. 12, 2005 Complaint").[7]  That action named the same thirteen defendants as named in the instant action (except that JP Morgan Chase & Co. was referred to as Chase Visa and Chase Mastercard).  On January 10, 2006 the Honorable James Ware dismissed without prejudice the Aug. 12, 2005 Complaint for failure to prosecute because plaintiffs had failed to file certificates of service and no parties appeared for a January 9, 2006 case management conference.  *See* Jan. 10, 2006 Order of Dismissal by the Honorable James Ware.

### C.   Alleged causes of action

#### 1.   Credit libel

Plaintiffs contend that defendants Fair Isaac, Trans Union, Experian, and Equifax used arbitrary and undisclosed criteria to "brand" plaintiffs as not creditworthy by giving plaintiffs a low FICO score, and further have "promulgated, published and broadcast" plaintiffs' low FICO score in credit reports, including multiple reports of the same debt.  *Id.* ¶ 8.  Numerous third parties have allegedly read and heard these credit reports.  *Id.*  Plaintiffs claim they were creditworthy and earn a six-figure income.  *Id.*  Therefore, defendants' "arbitrarily and discriminatorily published false and

---

[5]   As requested by Fair Isaac, the court takes judicial notice of the March 30, 2005 First Amended Complaint for Monetary Damages, Injunction and Declaratory Relief in *Hilton v. Fair Isaac, et al.*, C-05-01285 RS.

[6]   In particular, leave to amend was denied because the plaintiff there had already amended his complaint once and the court found any further amendment would be futile.  Aug. 8, 2005 Order at 2 n. 2.

[7]   As requested by Fair Isaac, the court takes judicial notice of the January 9, 2006 Order of Dismissal in *Arikat v. Chase Visa, et al.*, C-05-03302 JW.

1  defamatory and derogatory 'default' and 'delinquent' credit reports against plaintiffs" in their credit
2  reports. *Id.* Moreover, defendants Fair Isaac, Trans Union, Experian, and Equifax allegedly used
3  arbitrary and undisclosed criteria in giving plaintiffs a low FICO score while far less creditworthy
4  persons were being given high FICO scores. The low FICO score given to plaintiffs have allegedly
5  damaged plaintiffs in getting credit and have further lowered their FICO score. *Id.* Plaintiffs state in
6  their complaint that defendants have ignored plaintiffs' disputes as to the accuracy of certain charges
7  and fee assessments on their credit accounts. *Id.* Plaintiffs claim they have made repeated requests
8  to defendants to correct the "erroneous and disputed credit information" in the reports and to retract
9  the published information to no avail. *Id.* Rather, defendants allegedly called plaintiffs "a worse
10 deadbeat" and continued to "tack on interest and late fees [sic] etc. to plaintiffs without answering
11 the disputes or verifying the charges with documents and proof." *Id.* ¶¶ 8, 10-11.

### 2. Breach of Contract and Fraud

13      Plaintiffs allege that around February 1, 2004 defendants made "certain misrepresentations"
14 to induce plaintiffs to enter into "various and sundry credit agreements with all named defendants,
15 and/or their assignors" for credit cards and other commercial credit arrangements. *Id.* ¶¶ 16, 23.
16 Plaintiffs claim these were written agreements that provided "plaintiffs would be billed accurately
17 and would not be charged any additional fees not expressly agreed to" and "defendants promised to
18 bill plaintiffs accurately and fairly." *Id.* ¶¶ 17, 24. In support of their claims plaintiffs contend that
19 continuously since February 1, 2004 defendants breached these agreements by: (1) "arbitrarily,
20 unjustifiably, illegally and discriminatorily increasing the monthly payment for plaintiffs, (2)
21 imposing late fees and other 'administrative' and other fees plaintiffs never agreed to," (3) ignoring
22 plaintiffs' notices that they disputed the amounts due, and (4) refusing to provide plaintiffs written
23 proof of the disputed debts.[8] *Id.* ¶ 18. Plaintiffs claim that they relied upon defendants' alleged
24 misrepresentations and promises and defendants' conduct constitutes fraud. *Id.* ¶¶ 24-25.

---

[8] Plaintiffs allegations suggest that both defendants' purported fraudulent conduct inducing plaintiffs to enter into credit agreements and defendants' breach of said agreements commenced February 1, 2004.

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT                                          5

### 3. Violations of the FCRA and the ECOA

Plaintiffs claim that all defendants have violated the FCRA and the ECOA for the same six reasons:

    1) failing to accurately report credit information;

    2) reporting false and defamatory credit information against plaintiffs;

    3) failing to disclose clear and reasonable criteria for how plaintiffs' FICO scores are calculated;

    4) failing to report that plaintiffs reported having legitimate legal disputes over the accuracy and collectability of certain debts;

    5) denying plaintiffs credit, re-financing, equity lines of credit, and loans; and

    6) charging exorbitant interest rates.

*Id.* ¶¶ 29, 36.

### 4. Violation of CFDCPA

Plaintiffs additionally claim that all defendants have violated the CFDCPA continuously from February 1, 2004 to the present with (1) "endless annoying and minatory phone calls," (2) "endless letters and minatory notices," (3) calls at 4:00 a.m. and "ceaseless" calls at night, and (4) calls at night and outside their household. *Id.* ¶ 42. Plaintiffs contend these calls violated the CFDCPA because they were made in an annoying and harassing manner. *Id.*

### 5. Intentional Infliction of Emotional Distress

In their seventh cause of action plaintiffs claim that defendants' conduct alleged in support of plaintiffs' first through sixth causes of action "were outrageous and constitute intentional infliction of emotional distress, waking plaintiffs up at wee hours of the morning with harassing collection phone calls, etc." *Id.* ¶ 46.

## II. ANALYSIS

### A. Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts

1 alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th

2 Cir. 1988). The issue is not whether the non-moving party will ultimately prevail but whether it is

3 entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d

4 246, 249 (9th Cir. 1997). The court's review is limited to the face of the complaint, documents

5 referenced in the complaint, and matters for which the court may take judicial notice. *Levine v.*

6 *Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991). When evaluating a Rule 12(b)(6) motion,

7 the court must accept all material allegations in the complaint as true and construe them in the light

8 most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). A

9 court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that

10 the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

11 *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also United States v. Redwood City*, 640 F.2d 963,

12 966 (9th Cir. 1981). However, the court is not required to accept conclusory legal allegations "cast

13 in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts

14 alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

15     **B.**    **Motions to Dismiss**

16     During oral argument on April 28, 2006, plaintiffs' counsel conceded that the only claim

17 plaintiffs could state against Fair Isaac is credit libel.[9] Accordingly, plaintiffs' second through

18 seventh causes of action are dismissed with prejudice as to Fair Isaac.

19         **1.**    **Credit libel**

20     It is unclear whether plaintiffs' first cause of action is limited only to credit libel. Plaintiffs'

21 first cause of action is styled "credit libel" but alleges credit libel, slander, and libel per se. Compl. ¶

22 9. In any event, the complaint fails to allege a claim for relief under any of these legal theories.

23 Libel is "a false and unprivileged publication . . ." and slander is "a false and unprivileged

---

[9] Plaintiffs had also conceded several of their claims against Fair Isaac in their opposition. First, plaintiffs conceded they did not have a contract directly with Fair Isaac and that their breach of contract cause of action does not apply to Fair Isaac. Pls.'s Opp. Fair Isaac's Mot. Dismiss at 8. Second, plaintiffs conceded their claims under the ECOA as to Fair Isaac because Fair Isaac "does not act as a direct creditor with respect to plaintiffs." *Id.* at 11. Third, plaintiffs conceded their claims under the CFDCPA as to Fair Isaac because Fair Isaac "does not act as a direct creditor with respect to plaintiffs." *Id.* at 11.

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT        7

1  publication, orally uttered." Cal. Civ. Code §§ 45-46. To state a claim for either libel or slander a
2  plaintiff must establish "the intentional publication of a statement of fact that is false, unprivileged,
3  and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal.
4  App. 4th 637, 645 (1999); Cal. Civ. Code §§ 45-46. Publication means "communication to a third
5  person who understands the defamatory meaning of the statement and its application to the person to
6  whom reference is made." *Id.* In addition, to state a claim for libel, a plaintiff must plead the
7  alleged libelous words. *Okun v. Super. Ct.*, 29 Cal. 3d 442, 458 (1981) (noting that a libel claim
8  "require[s] exact pleading of words of libel").

9       As an initial matter, plaintiffs' allegations are insufficient in that they are ascribed to
10 defendants collectively rather than to individual defendants. *See Gauvin v. Trombatore*, 682 F.
11 Supp. 1067, 1071 (N.D. Cal. 1988) (holding that where allegations are made against multiple
12 defendants, "plaintiff must allege the basis of his claim against each defendant to satisfy Federal
13 Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put
14 defendants on sufficient notice of the allegations against them"). Plaintiffs allege that (1) Fair Isaac,
15 along with three other defendants, have "promulgated, published and broadcast" plaintiffs' low FICO
16 score in credit reports, including multiple reports of the same debt and (2) "defendants" have
17 defamed plaintiffs with "arbitrarily and discriminatorily published false and defamatory and
18 derogatory 'default' and 'delinquent' credit reports against plaintiffs."[10] Compl. ¶ 8. These
19 allegations do not identify the alleged statements made, who made the alleged libelous or slanderous
20 statements, or the falsity of any statements made.[11] While plaintiffs vaguely allege that defendants

---

[10] Plaintiffs' further allegation that defendants acted "maliciously, fraudulently and oppressively, with the wrongful intention of injuring plaintiff, [sic] from an improper and evil motive amounting to malice" is conclusory and supports no inference of libel or slander. *See* Compl. ¶ 13.

[11] While the complaint does name Fair Isaac as having "promulgated, published and broadcast" plaintiffs' low FICO score, it is not disputed that Fair Isaac is a provider of statistically based credit scoring systems and does not create or issue credit reports. *See* Compl. ¶ 8 (alleging that Fair Isaac promulgate standards used by the three major credit bureaus); Fair Isaac's Mot. Dismiss at 3-4; Pls.'s Opp. Fair Isaac's Mot. Dismiss at 2 ("The fact is that [Fair Isaac] is responsible for promulgating the criteria under which the other defendants denied plaintiff credit in a discriminatory manner, and libeled him."). In their opposition to Fair Isaac's Motion to Dismiss,

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT    8

called plaintiff Michael Arikat "a worse deadbeat," plaintiffs have not alleged facts indicating that defendants made the statement to any third party.[12] Accordingly, plaintiffs' first cause of action for credit libel, slander, and libel per se is dismissed as to Fair Isaac, Macy's, and Lowe's.[13]

### 2. Breach of contract

Under California law, a plaintiff must establish "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages" to state a breach of contract claim. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Plaintiffs' second cause of action for breach of contract is dismissed as plaintiffs fail to allege facts indicating the existence of a contract between plaintiffs and any of the defendants. Plaintiffs' vague allegation that they entered into "various and sundry credit agreements with all named defendants, and/or their assignors" is insufficient to provide any of the defendants with fair notice of plaintiffs' claims against them.

In their opposition, plaintiffs state "[t]he defendant [sic] Lowe's and Macy's did not have a contract directly with the plaintiffs." Pls.'s Opp. Macy's and Lowe's Mot. Dismiss at 8. Thus, plaintiffs do not dispute that plaintiffs' Macy's and Lowe's-branded credit cards were issued pursuant

---

plaintiffs do not dispute that Fair Isaac does not actually determine credit scores or create or issue credit reports. Pls.'s Opp. Fair Isaac's Mot. Dismiss at 1-2. Rather, plaintiffs contend in opposition that Fair Isaac, by promulgating "bogus" secret and arbitrary criteria for credit scoring, is liable as a conspirator with the other defendants in issuing defamatory low credit scores. *Id.* However, plaintiffs' complaint does not allege a conspiracy on Fair Isaac's part. The court need only look at the allegations in plaintiffs' complaint. *Levine*, 950 F.2d at 1483; *see Gilmour v. Gates*, 382 F.3d 1312, 1313 (11th Cir. 2004) (holding that a non-moving party plaintiff cannot raise a new legal claim for the first time in response to the opposing party's summary judgment motion). Moreover, even if the court were to consider an allegation of conspiracy, plaintiffs allege no facts that would support such a legal theory. Plaintiffs' complaint states that each of the defendants were the agent and employee of each of the remaining defendants but the complaint is devoid of any facts that might give rise to any inference of a relationship whether by agency or by employment. Compl. ¶ 5.

[12] Plaintiffs also generally state that "[t]he credit schemes employed by defendants, above described, amount to a 'system of legalized extortion,' by which any purported creditor can threaten to 'ruin a debtor's credit FICO score' by reporting a debt as delinquent or default, unless the debtor pays the creditor what is demanded." Compl. ¶ 8. It is unclear whether plaintiffs contend that the defendants in this action have "threatened" to ruin plaintiffs' credit rating unless plaintiffs agree to timely pay outstanding debt even if disputed. Regardless, plaintiffs' contentions to that effect are conclusory at best and fail to adequately state a claim.

[13] As noted earlier, it appears defendant Discover moved only to dismiss plaintiffs' third, fourth, fifth, and sixth causes of action.

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT                                                                 9

1  to plaintiffs' credit card agreements with third parties and not Macy's or Lowe's. However, plaintiffs
2  maintain they may have a breach of contract claim against Macy's and Lowe's. In support, plaintiffs
3  argue "[w]e are not sure that the fact that these defendants' names are not on the credit contract
4  absolves them of contractual liability." Pls.'s Opp. Macy's and Lowe's Mot. Dismiss at 1. Plaintiffs
5  then argue that Macy's and Lowe's may be alter egos of their credit agencies and that "plaintiff needs
6  [sic] to do discovery to determine what relationship Lowe's and Macy's has to the entire credit
7  operation." *Id.* Alternatively, plaintiffs suggest Macy's and Lowe's are liable for having acted in
8  conspiracy with the other defendants. *Id.* These added legal theories are speculative and plaintiffs
9  offer no facts to support them. In any event, even if plaintiffs were able to support liability under
10 another legal theory, the facts could not support a theory of breach of contract against Macy's or
11 Lowe's. Rather, plaintiffs' concession that there is no contract between plaintiffs and either Macy's
12 or Lowe's indicates that plaintiffs would not be able to state a claim for breach of contract against
13 Macy's and Lowe's. As such, leave to amend to state a breach of contract claim against Macy's or
14 Lowe's would be futile. Accordingly, plaintiffs' second cause of action for breach of contract is
15 dismissed with prejudice as to defendants Macy's and Lowe's.

16 **3.  Fraud**

17 To establish a claim of fraud a plaintiff must show (1) a misrepresentation (false
18 representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to
19 defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson*
20 *Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Further, Rule 9(b) of the Federal
21 Rules of Civil Procedure provides "[i]n all averments of fraud or mistake, the circumstances
22 constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "[W]hen
23 averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to
24 give defendants notice of the particular misconduct so that they can defend against the charge and
25 not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,
26 1106 (9th Cir. 2003) (internal quotations and citations omitted). The allegations "must be
27 accompanied by 'the who, what, when, where, and how' of the misconduct charged. *Id.* (citing
28

1  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)). "The plaintiff must set forth what is false or

2  misleading about a statement, and why it is false." *Id.*

3  Plaintiffs state their fraud claim as follows:

4  On or about February 1, 2004, defendants made certain misrepresentations to plaintiffs in order to induce them to sign loan and credit agreements. They promised
5  to bill plaintiffs accurately and fairly for actual goods and service [sic] purchased, and only on express terms and conditions agreed to *ab initio*.

6
   Plaintiffs relied on said statements to their detriment in that they signed up for the
7  credit cards and charged goods and services, borrowed from defendants and would [sic] up being defamed and harassed by collectors.

8
   On or about February 1, 2004, defendants reneged on their promises and agreements
9  above stated, by arbitrarily and discriminatorily increasing the monthly amount they required plaintiffs to pay. And they ignored plaintiffs' dispute of charges. These
10 actions constitute fraud.

11 Compl. ¶¶ 23-25. As with their cause of action for credit libel, plaintiffs' allegations improperly

12 ascribe conduct generally to all thirteen defendants. Plaintiffs' allegations in support of their fraud

13 claim are further deficient in failing to allege specific facts regarding how each defendant has

14 committed fraud upon plaintiffs. In addition, plaintiffs' fraud claim appears to be premised solely

15 upon defendants' purportedly fraudulently inducing plaintiffs to sign loan and credit agreements.

16 Yet, plaintiffs do not allege that the representations were false when made or that any defendant

17 acted with scienter. Plaintiffs' fraud cause of action is dismissed.

18 **4.   FCRA Claim**

19 Plaintiffs claim that defendants are subject to civil liability pursuant to 15 U.S.C. §§ 1681m-

20 1681o. 15 U.S.C. § 1681m sets forth the requirements of users of consumer reports to, *inter alia*,

21 give notice of adverse action taken based on credit information.[14] 15 U.S.C. § 1681m(a). 15 U.S.C.

22 §§ 1681n and 1681o create civil liability for willful and negligent noncompliance, respectively, by a

23 consumer reporting agency, user, or furnisher of information who fails to comply with the provisions

24 of the FCRA. 15 U.S.C. §§ 1681n-1681o; *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d

25

26  [14]   Plaintiffs' fourth cause of action alleges violations of 15 U.S.C. § 1681m, which sets forth requirements of *users* of consumer reports, but plaintiffs' allegations suggest defendants are
27 *furnishers* of credit information. The FCRA requirements for furnishers of credit information are set forth in 15 U.S.C. § 1681s-2.
28

1057, 1060 (9th Cir. 2002); *Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir. 1978).[15]  In order to state a claim under the FCRA, a plaintiff must allege that the defendant is within the class of defendants subject to FCRA liability.  The term "consumer reporting agency" means:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  A "furnisher" of credit information is one who provides credit information to consumer reporting agencies.  *Nelson*, 238 F.3d at 1059-60.  A furnisher is liable under the FCRA only if it does not respond to a formal notice of consumer dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2; 15 U.S.C. § 1681i(a)(2); *Nelson*, 282 F.3d at 1060 (holding that Congress set up 15 U.S.C. § 1681s-2(b) as a "filtering mechanism" wherein a disputatious consumer notifies a consumer reporting agency which in turns notifies the furnisher, and only a nonresponsive furnisher may be privately sued).

Macy's and Lowe's contend that plaintiffs have not alleged that Macy's and Lowe's are consumer reporting agencies or furnishers or users of credit information.  Macy's and Lowe's Mot. Dismiss at 11-12.  Macy's and Lowe's argue that because plaintiffs' Macy's and Lowe's-branded credit cards were issued pursuant to credit card agreements between plaintiffs and third parties unrelated to Macy's or Lowe's, plaintiffs cannot assert that Macy's or Lowe's improperly used plaintiffs' credit information.  *Id.* at 12.  Macy's and Lowe's also argue that plaintiffs vaguely attribute their allegations of FCRA violations to all thirteen defendants without any allegation as to what credit information was inaccurate, who reported inaccurate information, who used the information, what credit or re-financing was lost, and which lender imposed a "usurious and exorbitant interest rate."  *Id.* at 13.  Plaintiffs' opposition does not dispute that Macy's and Lowe's are

---

[15]     15 U.S.C. §§ 1681n and 1681o were amended in 1996 such that civil liability for noncompliance with the FCRA applies to "any person" who fails to comply with the requirements of the FCRA.  *Nelson*, 282 F.3d at 1060.  As the Ninth Circuit has explained, this amendment expanded the class of defendants subject to civil liability under the FCRA to include furnishers of credit information in addition to consumer reporting agencies and users of information because "there are involved in any credit transaction only the consumer, the [credit reporting agencies], the user of the credit reports and the furnishers of the credit information." *Id.* at 1060.

retailers or that their credit cards were not issued to plaintiffs pursuant to credit agreements with Macy's or Lowe's. Nevertheless, plaintiffs maintain Macy's and Lowe's are furnishers because "each entity who handles the data is a furnisher under the eyes of the law." Pls.'s Opp. Macy's and Lowe's Mot. Dismiss at 10.[16] Plaintiffs, however, cite no legal authority for such a definition of furnisher.

Discover argues that plaintiffs' allegations fail to support that defendants were "users" of credit card information within the meaning of 15 U.S.C. § 1681m or to allege any facts showing Discover ever used credit information in violation of 15 U.S.C. § 1681m. Discover's Mot. Dismiss at 5.[17] In opposition, plaintiffs contend each entity who handles the data is a *user* of credit information under the eyes of the law. Pls.'s Opp. Discover's Mot. Dismiss at 6. Plaintiffs cite no legal authority for this proposition.[18]

Plaintiffs' fourth cause of action fails to state a claim under the FCRA. While plaintiffs claim they are entitled to recover damages, including punitive damages, under an unspecified provision of the FCRA they neither allege that defendants are credit reporting agencies or users or furnishers of credit information nor make it clear how their complaints give rise to a claim under the FCRA. *See Burdett v. Harrah's Kansas Casino Corp.*, 294 F. Supp. 2d 1215, 1231 (D. Kan. 2003) (directing plaintiff to show cause why her FCRA claims should not be dismissed for failure to state a claim where plaintiff neither alleged that the defendant was a credit reporting agency nor made it clear how her complaints gave rise to a claim under the FCRA). Plaintiffs' allegation that Trans Union, Equifax, and Experian "are the three major credit bureaus in the country" who use Fair Isaac's credit

---

[16] Plaintiffs also argue that Macy's and Lowe's are credit reporting agencies. Pls.'s Opp. Macy's and Lowe's Mot. Dismiss at 10-11.

[17] Discover also argues that because plaintiffs allege that Discover "furnished" inaccurate credit information about plaintiffs to credit reporting agencies, 15 U.S.C. § 1681s-2(a) applies, but that section does not give rise to a private cause of action. Discover is correct in that 15 U.S.C. § 1681s-2(a) is limited to enforcement by governmental bodies; however, it is clear that civil liability against "furnishers" are within the purview of 15 U.S.C. §§ 1681n-1681o. *See Nelson*, 282 F.3d 1057, 1060 (holding that 15 U.S.C. § 1681s-2(b) includes a filtering mechanism against frivolous consumer disputes but puts "no limit on private enforcement under §§ 1681n & o" and that the 1996 amendment to those sections was to include private causes of actions against furnishers).

[18] In fact plaintiffs uses the same definition for *furnishers* of credit information in their opposition to Fair Isaac's and Macy's and Lowe's motions.

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT                                                13

scoring system does not support an inference that Fair Isaac is itself a consumer reporting agency or a user or furnisher of credit information. *See* Compl. ¶ 8. Neither does this allegation give rise to any inference of FCRA liability against Discover, Macy's or Lowe's. Plaintiffs' introductory allegation that all defendants are each agents and employees of the other is conclusory and similarly unavailing. *See* Compl. ¶ 5. Accordingly, plaintiffs' fourth cause of action is dismissed.[19]

### 5. ECOA Claim

The ECOA's stated purpose is to protect credit applicants and debtors from arbitrary denial or termination of credit.

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction - - (1) on the basis of race, color, religion, national origin, sex or marital statue, or age . . . (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under [the Consumer Credit Protection Act].

15 U.S.C. § 1691(a). An applicant is defined in 15 U.S.C. § 1691a(b) as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." A creditor is defined in 15 U.S.C. § 1691a(e) as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."

Plaintiffs' complaint fails to state an ECOA claim. First, plaintiffs' complaint contains no factual allegations that they were discriminated against based on any of the reasons enumerated in 15 U.S.C. § 1691.[20] Second, plaintiffs fail to allege that plaintiffs were applicants within the

---

[19] At oral argument plaintiffs contend that Macy's and Lowe's were involved at least in credit collection activities with respect to plaintiffs' Macy's and Lowe's-branded credit cards, which plaintiffs will allege if granted leave to amend their complaint.

[20] In their oppositions to Discover, Fair Isaac, and Macy's and Lowe's motions, plaintiffs for the first time state that they are of Palestinian origin. Regardless, plaintiffs' allegations of discrimination are wholly conclusory and without factual support. As to Discover, plaintiffs merely allege that:

> plaintiffs applied for credit and were defrauded by the actions of the defendants in

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT                                               14

meaning of 15 U.S.C. § 1691a(b) with respect to Discover, Macy's, or Lowe's.[21]  While plaintiffs contend that defendants collectively denied plaintiffs "credit, re-financing, equity lines of credit and loans, etc[.], by charging usurious and exorbitant interest rates — all of this done in violation of [the] ECOA," plaintiffs provide no facts to support this contention. Compl. ¶ 36.  Finally, plaintiffs enumerate several reasons in support of defendants' alleged violation of the ECOA, namely, defendants (1) failed to accurately report credit information, (2) reported false and defamatory credit information against plaintiffs, (3) failed to disclose clear and reasonable criteria for how plaintiffs' FICO scores are calculated, and (4) failed to report that plaintiffs reported having legitimate legal disputes over the accuracy and collectability of certain debts. *Id.*  Even viewed in the light most favorable to plaintiffs, these contentions do not support an inference that defendants or defendants' conduct falls within the purview of the ECOA.  Accordingly, plaintiffs' fifth cause of action is dismissed.[22]

### 6.   CFDCPA Claim

Defendants also move to dismiss plaintiffs' sixth cause of action alleging violations under the CFDCPA.  Defendants Macy's and Lowe's argue that plaintiffs have not alleged that defendants are "debt collectors" within the meaning of the CFDCPA or that defendants' conduct constitutes "debt

---

> wrongfully denying credit and credit services based on the proper [sic] motives of discrimination against plaintiffs because they are Palestinian which is discrimination against plaintiffs based on national origin, race, ethnicity and religion.

Pls.'s Opp. Discover's Mot. Dismiss at 3.  As to Fair Isaac, Macy's and Lowe's, plaintiffs merely allege "[d]efendant's main *malus animus* is that plaintiffs are of Palestinian origin. Therefore, the treatment of plaintiffs constitute discrimination based on national origin, race, ethnicity and religion." Pls.'s Opp. Fair Isaac's Mot. Dismiss at 7; Pls.'s Opp. Macy's and Lowe's Mot. Dismiss at 7.

[21]  Plaintiffs also did not allege that Discover, Macy's, or Lowe's are "creditors" for purposes of 15 U.S.C. § 1691(a).  Macy's and Lowe's acknowledge that plaintiffs have Macy's and Lowe's-branded credit cards, but contend that those cards were issued to plaintiffs pursuant to credit card agreements with third parties.  Macy's and Lowe's Mot. Dismiss at 13.

[22]  Plaintiffs do not dispute that their Macy's and Lowe's-branded credit cards were issued pursuant to credit card agreements with third parties—not with Macy's and Lowe's. Pls.'s Opp. Macy's and Lowe's Mot. Dismiss at 8.  However, at oral argument plaintiffs contend that Macy's and Lowe's were involved at least in credit collection activities with respect to plaintiffs' Macy's and Lowe's-branded credit cards, which plaintiffs will allege if granted leave to amend their complaint.

1 collection" within the meaning of the CFDCPA. Macy's and Lowe's Mot. Dismiss at 14.
2 Specifically, Macy's and Lowe's operate as retailers and did not issue plaintiffs their Macy's and
3 Lowe's-branded credit cards and, as defendants' argument goes, could not have made any debt
4 collection calls. *Id.* at 15.  Moreover, Macy's and Lowe's contend that plaintiffs' pleadings fail to
5 state who made the alleged calls, the debts sought to be collected in connection with such calls, and
6 when the calls where made. *Id.* at 14.  Defendant Discover likewise argues that plaintiffs' pleadings
7 are insufficient to state a claim under the CFDCPA because the alleged conduct is vaguely attributed
8 to all defendants and the allegations are otherwise conclusory. Discover's Mot. Dismiss at 8.

9 The CFDCPA serves to "to prohibit *debt collectors* from engaging in unfair or deceptive acts
10 or practices in the collection of consumer debts and to require *debtors* to act fairly in entering into
11 and honoring such debts." Cal. Civ. Code § 1788.1 (emphasis added). Article II of the CFDCPA
12 sets forth prohibited conduct of debt collectors and Article III governs the conduct of debtors. Cal.
13 Civ. Code §§ 1788.10-1788.18; §§ 1788.20-1788.22. Therefore, for the purposes of the instant
14 action, plaintiffs must, as an initial matter, allege that each defendant is a "debt collector" with
15 respect to plaintiffs. The CFDCPA defines "debt collector" as:

16 any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who
17 composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an
18 attorney or counselor at law.

19 *Id.* § 1788.2(c). "The term 'debt collection' means any act or practice in connection with the
20 collection of consumer debts." *Id.* § 1788.2(b).

21 Plaintiffs only allegations in support of their CFDCPA claim are that all defendants have
22 violated the CFDCPA continuously from February 1, 2004 to the present with (1) "endless annoying
23 and minatory phone calls," (2) "endless letters and minatory notices," (3) calls at 4:00 a.m. and
24 "ceaseless" calls at night, and (4) calls at night and outside their household. *Id.* ¶ 42. Moreover,
25 plaintiffs contend these calls violated the CFDCPA because they were made repeatedly and in an
26 annoying and harassing manner. *Id.* Plaintiffs' sixth cause of action is dismissed on two grounds.
27 First, plaintiffs make no allegations that any of the defendants are "debt collectors" within the
28

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT                                                                                  16

meaning of the CFDCPA. Second, plaintiffs' allegations, even if accepted as true and viewed in the light most favorable to plaintiffs, are too vague to give rise to any inference that a specific defendant has violated the CFDCPA. *See Gauvin*, 682 F. Supp. at 1071. Accordingly, plaintiffs' sixth cause of action is dismissed.[23]

### 7. Intentional Infliction of Emotional Distress

In order to state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by defendant, (2) defendant's intended to cause or acted with reckless disregard of the probability of causing emotional distress, (3) plaintiff suffered severe or extreme emotional distress, and (4) defendant's outrageous conduct was the actual and proximate cause of plaintiff's emotional distress. *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989). Outrageous conduct is conduct so extreme as to exceed all bounds of that usually tolerated in a civilized society. *Id.* at 883. Whether conduct constitutes "outrageous conduct" is normally an issue of fact. *Id.* A court may nonetheless make an initial determination of whether defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Id.*

In support of their seventh cause of action, plaintiffs allege "[t]he above acts of defendants were outrageous and constitute intentional infliction of emotional distress, waking plaintiffs up at wee hours of the morning with harassing collection phone calls, etc." Compl. ¶ 46. Elsewhere in their complaint, plaintiffs contend they have been "damaged emotionally," have "suffered pain," and have "suffered emotional distress of anxiety and insomnia and depression, and has incurred great expenses, and other health, employment and career benefits [sic], as well as lost potential income earning ability." *Id.* at ¶¶ 12, 20, 33, 40, 43. Plaintiffs' seventh cause of action for intentional infliction of emotional distress is dismissed. Plaintiffs have not alleged outrageous conduct on the

---

[23] Plaintiffs do not dispute that their Macy's and Lowe's-branded credit cards were issued pursuant to credit card agreements with third parties—not with Macy's and Lowe's but they do not address Macy's and Lowe's motion to dismiss plaintiffs' CFDCPA claim in opposition. Pls.'s Opp. Macy's and Lowe's Mot. Dismiss at 8. This suggests that plaintiffs would not be able to allege facts supporting a violation of the CFDCPA by Macy's or Lowe's. However, at oral argument plaintiffs contend that Macy's and Lowe's were involved at least in credit collection activities, including making collection calls to plaintiffs, with respect to plaintiffs' Macy's and Lowe's-branded credit cards, which plaintiffs will allege if granted leave to amend their complaint.

ORDER GRANTING DISCOVER FINANCIAL SERVICES, INC.'S, FAIR ISAAC CORPORATION'S, AND MACY'S DEPARTMENT STORES, INC.'S AND LOWE'S HIW, INC.'S MOTIONS TO DISMISS
C-06-00330 RMW
SPT                                                                17

part of Fair Isaac, Macy's and Lowe's, or Discover. Moreover, even if plaintiffs' conclusory allegations of conduct on the part of all defendants collectively were attributed to each defendant individually, plaintiffs fail to allege that they suffered emotional distress of the requisite severity or that any of defendants' alleged conduct was the actual and proximate cause. *See Schild v. Rubin*, 232 Cal. App. 3d 755, 762-63 (1991) (holding that the alleged emotional distress must be so "intense, enduring and nontrivial" that it exceeds what a reasonable person in a civilized society should be expected to endure).

### C. Leave to Amend

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). A motion to dismiss is not a "responsive pleading" within the meaning of Fed. R. Civ. P. 15(a). *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963). Fed. R. Civ. P. 15(a)'s edict that "leave shall be freely given when justice so requires" is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citations omitted)). Absent prejudice or a strong showing of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendment, or futility of amendment, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

In the present action, plaintiffs have not yet had the opportunity to amend their complaint.[24] However, it is noted that defendants Home Depot U.S.A., Inc., Sears, Roebuck and Co., Wells Fargo Financial California, Inc., Equifax, Inc., and Experian Services Corp. have all filed answers to

---

[24] Fair Isaac's argument that this "is the third of its kind" of action filed in the past year by plaintiffs' counsel is noted. The *Hilton* Complaint and the Aug. 12, 2005 Complaint are indeed currently before this court. However, although the *Hilton* Complaint alleges almost all the same causes of actions as the instant suit and has also named Fair Isaac as a defendant, that suit was not filed on behalf of the plaintiffs in the instant action. While the Aug. 12, 2005 Complaint was filed by plaintiffs alleging the same causes of actions and named the same defendants as here, that complaint was dismissed without prejudice prior to the benefit of any dispositive motions or hearings.

plaintiffs' complaint. As such, plaintiffs may amend their complaint only by leave of court or the defendants' written consent. Plaintiffs have requested leave to amend their complaint both in their opposition briefs and at oral argument (except as to the second through seventh causes of action as to Fair Isaac).

**D.    Fed. R. Civ. P. 12(e) Motion**

Rule 12(e) of the Federal Rules of Civil Procedure provides that "[i]f a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Because the court has granted defendants' motions to dismiss, defendants' Fed. R. Civ. P. 12(e) motions are rendered moot.

### III.  ORDER

For the foregoing reasons, the court:

1. GRANTS Discover's motion to dismiss as to the third, fourth, fifth, and sixth causes of action without prejudice;

2. GRANTS Fair Isaac's motion to dismiss as to the first cause of action without prejudice and GRANTS Fair Isaac's motion to dismiss as to the second through seventh causes of action (inclusive) with prejudice;

3. GRANTS Macy's and Lowe's motion to dismiss as to the first, third, fourth, fifth, sixth, and seventh causes of action without prejudice and GRANTS Macy's and Lowe's motion to dismiss as to the second cause of action with prejudice; and

4. GRANTS plaintiffs twenty (20) days to amend their complaint.

DATED:      5/3/06                           */s/ Ronald M. Whyte*
                                             RONALD M. WHYTE
                                             United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Stanley Hilton            FROG727@AOL.COM

**Counsel for Defendants:**

| | |
|---|---|
| Deborah Barack | dbarack@stroock.com |
| Albert Finch | tfinch@eakdl.com |
| Martin L. Fineman | edithshertz@dwt.com |
| Brian C. Frontino | bfrontino@stroock.com |
| Deanna L. Johnston | dljohnston@jonesday.com |
| James R. McGuire | jmcguire@mofo.com |
| Stacy Marie Monahan | smonahan@jonesday.com |
| Andrew W. Moritz | Amoritz@Stroock.com |
| Stephen Michael Rummage | steverummage@dwt.com |
| William L. Stern | wstern@mofo.com |
| Darya V. Swingle | daryaswingle@dwt.com |
| Michele Kathleen Trausch | mtrausch@hansonbridgett.com |
| Julia H. Veit | jveit@hansonbridgett.com |
| Chris Jacob Young | cyoung@mofo.com |
| Felicia Yu | fyu@reedsmith.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     5/3/06                                      SPT
                                                **Chambers of Judge Whyte**